# IN CHANCERY.

Lansing *v.* The Albany Insurance Company.

MARCH 24, 1824.

A bill of review was submitted to Chancellor San-ford, on a motion to stay the sale of a mortgaged fee estate, which had been directed by a decretal order in chancery.

The Chancellor said he was a stockholder in the defendants' company, and as such, a party in interest; that he had lately had occasion to consider this point, and referred it to the Chief Justice, on whom the equity powers of the court were in such cases devolved by law. Application having been accordingly made to the Chief Justice, he heard the counsel for the parties, and denied the motion.

The bill of review stated, that on the 4th day of February, 1822, the defendants had filed a bill of foreclosure on two mortgages executed by the plaintiff and his wife to the defendants, for securing the payment of $11,000, payable on certain promissory notes; which notes had been made and dated on the 15th day of September 1817, by the plaintiff, and endorsed by Sanders Lansing, and of which mortgages and notes the defendants made profert in their said bill. That the plaintiff put in a plea to the said bill of foreclosure, that no such mortgage had been executed by him; which plea he afterwards withdrew, assenting that the cause should proceed in the usual course. That the defendants accordingly proceeded to a reference, and obtained a report and a decretal order for the sale of the mortgaged premises by a master, who caused a notice to be published of such sale.

That after the engrossment of the said decree, the plaintiff, John Lansing junior, discovered that neither the said mortgages or notes had been executed or made by the plaintiff; and that the notes filed in the

register's office, as being conformable to the description thereof in the said bill of foreclosure, had no resemblance to those described in the said bill of foreclosure, and were dated on the 15th day of December 1819.

The plaintiff alleged that the decree was contrary to law, and prayed its reversal for the four following reasons :

1. That no such notes described in the bill to foreclose ever existed.

2. That the mortgages filed are not the same as those described, and have no relation to or connection with the said notes.

3. That there were no such mortgages as described in the said bill.

4. That the decree of sale of the said mortgaged premises is contrary to law.

To this bill of review the defendants demurred. 1st, generally ; and 2d, because it had been filed without the leave of the court first had and obtained.

After which, it having been discovered that Chancellor Kent had, during the whole process, from filing the said bill of foreclosure to rendering the decree thereon, and during all which time he had held the office of chancellor, held 55 shares of stock in the defendants' company.—A petition was presented, praying leave to file a supplemental bill of review, in consequence thereof.

Parker, for the defendants, objected, that as no leave had been obtained to file the bill of review : it could not sustain a supplementary bill. He cited Cooper 89, 90.

Lansing, plaintiff, said the errors assigned were apparent ; so not necessary that leave should be obtained to file it.

The Chief Justice granted leave to file a supplemental bill, *upon condition that in it should be inserted the fact, that the decree in the said cause was entered by virtue of the stipulation of the defendants in the said cause, stating it ; and that no judicial act was done by the said James Kent in relation thereto.*

A bill was accordingly filed, stating that no judicial act, &c. in the words of the condition, subjoining the allegation that *Chancellor Kent was incapable of doing any judicial act, as a party in interest in the said suit ;* the bill having been previously submitted to the Chief Justice, and his acquiescence obtained.

To this bill the defendants put in a general demurrer.

Upon a hearing on the bill of review, the bill supplemental thereto, and the said demurrers—

*Parker*—As to the bill of review, the decree in the original suit was by default. Review can only be had on matters in issue. Leave to file the bill ought to have been obtained, and stated in it.—As to the supplemental bill, the plaintiff has not used due diligence to discover Chancellor Kent's interest. There is no complaint of injustice. The practice of the court, for several years, has been to sell on mortgages.

*Plaintiff*—This bill is in the nature of a writ of error. The objection as to the issue, is neither supported by authority or principle. The errors are apparent, and all the facts admitted by the demurrers. The rule in Cooper is purely English. The objection to the bill as to leave, was repelled, and the court imposed an unprecedented condition as the price of obviating it. Chancellor Kent's interest was in a private corporation—a close concern : accident, not diligence, could only divulge it ; but the whole doctrine applies to voidable, not to void acts, as this is. It is a maxim of common law, the dictate of natural justice as well as of common sense, that no man shall sit as a judge in his own cause. Withdraw the chancellor from the court of chancery, and there is no judicial power derived from him in it in any possible form. The essence of the objection is, there was no judicial officer to make or sanction the decree. The 13th section of the 7th article of the constitution constitutes the common law of England and the acts of the legislature the only source of law in this state. Usage or practice is exclusively intended to subserve the administration of the laws ; they cannot alter or subvert them. Error

is injustice : no allegation extrinsic the record can be admitted. Here was no cause of action ; and if such notes exist, there is nothing to prevent a recovery, for a decree in this case could not bar it.

The Chief Justice said, that upon the bill of review and demurrer filed, leave had been given to file the supplemental bill, on the fact lately discovered, that Chancellor Kent was a stockholder in the defendants' company, of fifty-five shares ; that no adjudication had been made by him ; that this fact was admitted ; that it was assigned as error, as if set forth in the bill of review ; that as far as that bill sought a reversal of the decree for error apparent, it was properly filed. The only alleged error of that kind was, that it was contrary to law to decree a sale of land mortgaged in fee.

He then proceeded in his opinion as follows :

" It is not necessary for me to discuss the question at large. Sales of mortgages in fee have been directed in this court since its organization, or at least since the passing of the statute. [The statute of 1813, it is supposed, is here alluded to.] If this statute does not expressly authorise a sale by an order of this court, yet such sales have been practised and acquiesced in ; have been subjects for appeals to the court for correction of errors : but no counsel has ever thought it worth making it a point for argument.

" I certainly shall not undertake to establish a new doctrine and a new practice in that respect, and therefore decide against that cause assigned for error.

" So far as a reversal on account of an error in fact, matter newly discovered, the bill is not properly before me. Leave of the court should have been obtained, and such leave should be stated in the bill. (1 Har. 139.)

" I shall therefore consider the question as if arising on a petition for leave to file a bill of review. The facts set forth as newly ascertained, are such as might have been known with ordinary diligence before the decree ; and some of them have been known, as appears from the plaintiff's own showing. Upon a sup-

plemental bill in the shape of a bill of review, the question always is, not what the plaintiff knew, but what, using reasonable diligence, he might have known. (Young v. Kingsly, Ves. 352. 3 Johns. Cas. 326. 2 Johns. Cas. 490.)

"The rule is perfectly reasonable. It is proper there should be at some time an end of litigation; and parties should not be permitted, as in this case, *to confess a judgment,* and afterwards contest the facts.

"Whether the objection as to the competency of the chancellor under the circumstances of this case, is well founded, I need not enquire.

"It is an established maxim, that a man shall not be judge in his own cause. The reason is, that his interest may bias his judgment, wherever that interest exists. Where the rule exists, the reason of the rule is in full force.

"In this case, every stockholder must have been named but for the act of incorporation, which authorises an action in the corporate name of the company; and the interest of each stockholder is the same as if he was particularly named as one of the parties. It is decided in Dr. Benham's ease, 8 Co. 234, that the members of an incorporated company, the president of the college and commonalty of physicians in London, were incompetent to act in imposing a fine. And Lord Coke says that censors cannot be judges, ministers and parties —judges to give judgment or sentence, ministers to make summons, and parties to share a moiety of the forfeitures;—'quia aliquis non debet esse judex in propria causa, imo iniquium est aliquem suæ rei esse judicem;' and cannot be judge and attorney for any of the parties.

"It was stated in the bill, and so the truth undoubtedly was, that no judicial act had been done by Chancellor Kent. The proceedings were had out of court, and the chancellor knew not that such a cause was in his court. After plea pleaded, it was withdrawn, and a stipulation entered into, by virtue of which it was entered.

"There is no complaint that the decree was for too much. The plaintiff seeks a reversal for what is here emphatically and strictly a technical objection. I am satisfied it ought not to be allowed. The plaintiff is now too late. He knew, or might have known, the chancellor's interest as well before as after the entry of the decree; and the defendants are therefore entitled to a decree on the demurrer."

## IN CHANCERY.

EGBERTS *v.* LANSING.

SEPTEMBER 7, 1824.

Sanders Lansing mortgaged in fee to the complainant a lot in Water-street in the city of Albany, for securing the payment of $1000, to the equity of redemption of which the defendant, John Lansing junior, had become entitled.

A bill to foreclose had been filed; a reference to a master obtained; and upon the coming in of his report, T. V. Vechten moved for a confirmation, and an order for sale of the mortgaged premises.

The defendant, J. Lansing, objected—

There is no law in this state to warrant a judicial sale on a mortgage in fee, where all the parties appear. It is a process of recent introduction. The rule is to foreclose; that is, to adjudge the mortgagor entirely barred, which devolves his interest upon the mortgagee, by merging it into the mortgagor's estate at law. So has always been the practice, till about the year 1817. The new practice is repugnant to the common law.

SANFORD, *Chancellor*—I found the practice so; it has obtained for some time, and I will adhere to it.

Order for sale.