Woodworth, J.
declined giving an opinion, on the ground that he had purchased lands, the title to which depended on decrees like the one in question*
*420 *Sutherland, J. because he was related to the appellant and
Savage, Ch. J.
because he had expressed an opinion on one of the questions raised, while sitting for the chancellor in a cause wherein the appellant was a party. (Vid. 1 Hopk. 104.)
*421 *But several of the senators declaring they had no doubt upon the case, an early day was assigned for its decision, when the opinion of this court was delivered by
*422 "Oliver, Senator. It has been well observed, that few parts of the law lead to the discussion of more extensive or useful learning than the law of mortgages.
The doctrine in relation to them has been gradually altered from their first institution till the present period, till they have now become one of the most convenient securities in use.
The leading principles in relation to them are generally well understood by community ; and any innovation upon *what is considered their practical effect and consequences might create serious and permanent injury.
Anciently there was no right of redemption in the mortgagor, after forfeiture, and the British parliament in the fourteenth year of Richard the second, refused to admit it. (1, Chan.„Ca. 219. Butler’s Notes on Coke upon Littleton, (205 a) note Í.)
Equity, however, soon interposed, and permitted the mortgagor to redeem after forfeiture, by paying the principal, interest and expenses of the mortgagee. This led to the process of foreclosure, and subsequently to a sale of the premises.
Formerly it was not usual to insert a power of sale in mortgages; but the insertion of this power in them is of ancient date, and is recognized by our act concerning mortgages in its sixth and seventh* sections.
In the case now under consideration, it is contended that the practice of foreclosure and sale by the court of chancery, is of recent date; but this cannot be so; for Sir William Blackstone speaks of them as in use previous to the time when he wrote his Commentaries, (2 Bl. Com. 159,) which was upwards of sixty years ago.
In this state sales of mortgaged premises by the court of chancery, are believed to be coeval with the organization of that court, under the constitution of 1777. The amount *423 of property now held under them is incalculably great, and to question their validity at this late day, cannot be tolerated.
The sale by a master under a decree of the court, .is, it is believed, tantamount to a foreclosure, and the mortgagor can no more redeem in one case than the other.
This seems to follow as a necessary consequence, if the court of chancery has power to order a sale.
This power of the court, independent of its long exercise, seems to be recognized by the eleventh section of the act concerning the court of chancery, (1 R. L. 48.) By this section, the deed of the master is made-an entire bar against the mortgagor and mortgagee, and their heirs respectively.
♦The sale then, by the master, and the deed pursuant to it, are an effectual foreclosure of all equity of redemption.
The purchase of part of the premises by the mortgagee, cannot vary the case. The tenth section of the act concerning mortgages, gives a mortgagee a right to become a purchaser ; and provides that no sale shall be questioned on this account, either in law or equity.
The only remaining question is, whether the proceeding on the judgment upon the bond, after the sale of the mortgaged premises, opened the foreclosure, and let in the right of redemption of the mortgagee 1
The cases of Blackwood v. Blithway, (1 Eq. Ca. Ah. 317,) Perry v. Barker, (8 Yes. Jun. 527,) and the same case, (13 Yes. 197,) would seem, if they are good authorities, to establish the affirmative of this question, at the common law; but the learned and eloquent jurist (Erskine) who pronounced the opinion in the book last cited, appears himself to be dissatisfied with it. He says that he was informed by the chancellor of Ireland, (Redesdale,) that the practice there was to take a decree of sale instead of foreclosure, and if the premises, on the- sale, did not satisfy the mortgage, a suit might be brought on the bond to recover the balance without opening the decree.
This practice has long prevailed in Massachusetts, (3 Mass. Rep. 562,) and has been sanctioned by Story, J., in Hatch v. White, (2 Gallison, 152.) In this opinion of

) A reference to Lansing v. The Albany Insurance Company, (1 Hopk. Ch. Rep. 102,) and The Globe Insurance Company v. Lansing, (5 Cowen, 380,) with the following cases, a noté of which Was furnished to the court bf errors by the learned and venerable appellant, himself the late chancellor of *419 this state, will so fully exhibit the history and grounds of) and the hooks relating to the controversy now put at rest by the principal case, that I have deemed it unnecessary to state more which came from counsel than the points made hy them.
mCHANCERY.|S r 824_ Egberts v. Lansing, j ■ ?
Sanders Lansing mortgaged in fee to the complainant ,a lot in Water street, in the city of Albany, for securing the payment of $1000, to the equity of redemption of which the defendant, John Lansing, junior, had become entitled. A bill to foreclose had been filed; a reference to a master obtained; and upon the coming in of his report, Í1 Y. ITechtert moved for a confirmation, and an order for sate of the mortgaged premises.
The defendant J. Lansing, objected.
There is no law in this state to warrant a judicial sale on a mortgage in fee, where all the parties appear. It is a process of recent introduction. The rule is to foreclose : that is, to adjudge the mortgagor entirely hatred, which devolves his interest upon the mortgagee, by merging it into the mortgagor’s estate at law. So has always been the practice, till about the year 1817. The new practice is repugnant to the -common law,
S.indford, Chancellor. I found the practice so -; it has obtained for some time, and I will adhere to it.
Order for sale.
m CHANCERY.
L.vnsiNg 0. Goblet, {the principal case.)
After stating the ease substantially as Stated in thé text, fhieé points Were made by the plaintiff:
1. That a mortgagee, before foreclosure, has merely a chattel interest in the mortgaged estate;
2. That the sale of that chattel interest cannot affect the equity Of re demption;
3. That if the order for sale is deemed a foreclosure, it is a satisfaction of the mortgage -debt.
Plaintiff in petsott. That tile interest of the mortgagee before foreclosure is a Chattel, has been long held, as appears from numerous authorities. (1 Ch. Gas. 283. 2 id. 263. Br. Rep. 200. Dough 810. 2 Yem. 367. Prec. in Ch. 11. 2 Tern. 1S3. Sir W. Bladkstone’s Rep. 145. Salk. 605.) And the same doctrine was recognized by'Chancellor Kent, in Wilson «. King,e {1 John. Ch. Rep, 145. 7 John. Ch, Rep. 25,) laying if eb'tim broadly, that a mortgagee ean do no act to affect the mortgagor’s right before foreclosure ■ *420 and accordingly, whenever he speaks of sales on mortgages, he always coup» les them as a foreclosure and sale. E so, the sale in this case only passed a chattel.
The second point; The common law text is, if the mortgagor takes the land, the mortgagee takes the money: the one is a full equivalent for the other. (Cro. Car. 331. 2 Keb. 387. Co. Lit. 332. 1 Ch. Ca. 244. 2 Atk. 103. 8 Co. 116.) On this point all unite; and every modem systematic writer on the subject, Blackstone, Bow ell and Cruise, in deducing the doctrine of mortgages, express not the least hesitation on the subject as to the correctness of this text.
As to the third point, there is no act of the legislature of this state on the subject of judicial sales, excepting only as to absentee mortgagors. There is no decree of foreclosure in those cases; and the legislature seem to have had this distinction in their eye, by the provision that the master’s deed shall have like effect as if executed by the mortgagor and mortgagee.
The English court of chancery held this an open question for a long series of years. The departure from the common law, and the return to it are to be traced through Mosely, 19 Eq. Cas. Ah. 317 ; Yiner’s Ab. title Mortgages, F. p. 24; 2 Dick. 551, 785, 787; 2 Bro. Ch. Rep. 125,126; 1 Yern. • 257; 2 Atk. 103; 18 Yes. 83, 197; and 1 Yes. & Bea. 223; the last two cases in 1806 and 1813.
The common law of this state, from its constitutional limit, is paramount to the most ancient of these cases. On the case of Mondey v. Mondey, on a supposed pre-existing practice in this court, and on the construction that a bill of foreclosure was a proceeding in rem, and so conferred jurisdiction over the mortgaged premises, and every person or thing connected with them, the doctrine of judicial sales was bottomed by Chancellor Kent—all manifestly erroneous.
This was adjudged in Kershaw v. Thompson, (3 John. Ch. Rep. 387,) in 1818.
That sales were not in the course of the common law, has been shown. On a search recently directed by Chancellor Sandford, it appeared that a strict foreclosure was in the colonial course from the origin of chancery in the colony till the revolution. • The origin of the state practice as to judicial sales, has been recognized in the eases adjudged in this state as receiving its start from the adjudication in Kershaw v. Thompson. In that case, that of Yates v. Hinkly, was cited as a decision of Lord Hardwicke, (3 Atk. 360,) as supporting the doctrine that a bill of foreclosure was a proceeding in rem.
*421 That case arose on a bill to redeem, which was in effect a proceeding in rem. but it became so by the Stat. Geo. 2, ch. 7, and. the decree was in strict conformity to that statute.
Henry, for defendant, stated two points: .
1. That there not being a decree of foreclosure where a sale was directed, does not leave the equity of redemption open 3
2. That the prosecution for satisfaction by judgment on the bond accompanying the mortgage, and the execution, did not open the equity of redemption.
The master’s sale gave effect to the decree as effectually as if made by the mortgagor and mortgagee. Cases of strict foreclosure are of rare occurrence. He had only one during his practice. Sale includes foreclosure. (2 Powell onMort. 1039,1040, 1059, 1060.) Personal estate was sold to supply deficiency on mortgage. It is the course of-the court to exercise power of sale. Debt must be satisfied. (2 John. Rep. 490. Delabigare v. Rush, 3 John. Rep, 169. 13 Yes. 84. 1 Hopk. 231. id. 103. Lansing v. Albany Insurance Company.) The execution is only for deficiency. Judgment and sale are conclusive. To open the sale, is to restore the pledgej hut this sold to strangers. Statute expressly says it shall be valid. 2 Powell on Mort. 1075, Ch. Cas. 136,2 Dick. 788, cases of judicial sales. 13 Yes. 203 as to sales to third persons 2 G^-ll. 250 ; Toon u. White, 2 Dick, 551; 3 John. Ch. Rep. 227, 380 5 express as to sales. Distinction as to chattel interest, not tenable. Debt is principal, securities merely incidental. A mortgagee may sell his right, but a decree indispensable. Mortgagee is trustee—may sell and pay himself. Worth may be questionable, and value can only be ascertained in the market. If mortgagee permits sale, it is Ms own fault. The statute confirms master’s sale—sheriff’s required confirmation. (1 K. & R. L. N. Y. 443, § 13.) The mortgagee has made his election to have Ms debt. There have been no appeals.
Plaintiff, in reply. The English doctrine has been uniform in all its changes, in the admission of the common law rule. The opening admits it was otherwise shut. The plaintiff contends not for opening it, but that it never has been closed. If the sale was void, nothing passed, and no rights are deducible from it. TMs is not a case "in which mortgagee can be trustee— there is notMng to trust him with 3 the parties are adverse to each other, and have been so throughout. Practice is merely the habit and rules of court, to give laws construction and effect, not to impugn or alter them.
August Term, 1826.
Jones, Chancellor, disavowed giving anyformal opinion; barely observing, that the uniform practice, wMch his recollection supported, was according to *422 the proceedings of the defendant; that he considered this case as decided both in chancery and the supreme court; and until those opinions were reversed, he should deem them to be the law of the land.
Afterwards, on a rehearing, the chancellor assigned his reasons at large as in the principal case.