Birchard, J.
This case involves a new question under the law providing for the collection of claims against steamboats by name; and, by the agreement of counsel, one point only has been discussed, which alone is to be decided.
They have stated it thus : “If a craft has been once sold under this law (Swan’s Stat. 207), does it bar another seizure and sale of the same craft, on a claim existing at the time of the former seizure and sale?” In other words, does a bona fide judicial sale of this species of property pass a title to the purchaser? Simple as is the question, it has to us been somewhat embarrassing, although the point was never before this court in any other case, and now for the first time has been passed upon ; yet, in the cases growing up under the provisions of the law, heretofore disposed of, we have been favored with the views of many very eminent counsel, residing in different parts of the state, and so singularly infelicitous is the wording of the statute, that I know not that any two members of the bar place the same construction on all its parts. Under these circumstances, we may consider ours tlves fortunate beyond the common lot, if our construction shall happen to meet the approbation of the entire profession.
*411 Section 1 of the act declares steamboats shall be llable for debts contracted, etc.
Section 2 declares that the person having the demand may proceed against the owner, master, “ or the craft itself."
Sections 4 and 5 authorize the seizure and detention of the craft on mesne process.
Section 6 reads, “ That, upon the return of the writ, the pleadings and other proceedings shall be as in other cases of process, served and returned. And, after this judgment, the property seized and still held, may be sold upon execution to satisfy the judgment; and the surplus money, if any, arising *from such sale, shall be returned to the owner, master, or agent, on demand, as in other cases of execution,” etc.
The craft “ shall be liable." These words have sometimes been spoken of as creating a lien for the .demand. If they have such effect, the claim first in order must have priority; and, if the craft be much in debt, the purchaser of the later liens, although the creditors prior in time might never think of asserting their claims, would never know when they might purchase with safety, and sales and transfers and credits upon the security of the craft would ever be hazardous. But these words are not those usually employed in statutes, when the legislature intend to create a lien, striotly speaking. Thus section 1 of the act regulating judgments and executions (Swan, 467) provides, that “lands, tenements, goods, and chattels shall be subject to the payment of debts, and shall be liable to be taken on execution and be sold.” Hero the words are the same, and yet this part of the act has never been construed to create a lien. The owner, notwithstanding this clause, can transfer any of the property named, and clothe the bona fide vendor with a good title, no matter how much he may be indebted. Section 2 creates a lien. The lands, etc., “ shall be bound,” from the date of the judgment. The goods and chattels “ shall bo bound” from the time they are seized in execution. Now if the intention had been to create a lion, that is, “ bind the boat," instead of creating a liability to mesne process, and to be substituted as defendant, in place of the owners, the fair presumptioft is that the words and phrases commonly used to convey that intention, and not those commonly used to convey a different moaning, would have been employed. We therefore declare that section 1 of the act does not create a lien. It merely declares a liability, leaving the mode *412 of enforcing it to the provision made in the four next succeeding sections.
The provisions of section 4 authorize a lien, by providing for the seizure of the craft, and its detention until discharged by due course of law. From the time of this seizure a lien is created; the property is bound, and may be sold on execution. It is, in our opinion, the only thing which can be regarded *in that light. This construction will aid the vigilant creditor, by allowing to him the same advantage that one secures to himself by making a levy on personal property. It will enable him to satisfy his claim out of the proceeds of the sale. Its operation will be the same as occurs in other cases of susceptible levies of several executions on the same piece of personal property. The lien first attaching, by virtue of the seizure, will bo first satisfied, and so on, in the order of priority. There may and doubtless will occur cases of hardship, arising under this construction. Several possible cases are suggested by counsel ; as if the craft should be seized, condemned, and sold, and the overplus paid over to the owner, before a prior creditor is informed of the proceeding. It is true that he would lose his right to proceed in that case against the “ craft itself,” by name. But an answer to this is, that the law favors the. diligent and vigilant. No one is compelled to permit a debtor craft to depart without security; and if he do so, and thereby lose his claim, he need blame no one but himself. The case of an indulgent creditor who delays issuing his execution until a more v.igiiant creditor has levied upon all the property of the judgment debtor, is a case of as great hardship.
A craft navigating the waters of the state, can not be sold under this statute, without disturbing its regular trips from place to place; and the delay will enable the vigilant, seeking to prosecute their claims, to attach it successively at any time after the first seizure, and before sale, and, in that way, make out of her the amount for which a sale can be effected. The first judicial sale, then, must pass the entire interest, and vest in the purchaser a perfect title. Indeed the provisions of section 6 seems to show that the object was to*treat the property, after execution upon it, the same as if it had been levied upon by any other execution against the owner.
Counsel have urged that such a construction is inconsistent with the provisions of section 2 of the statute, and virtually repeals it. *413, 414 This, however, is a mistake. The right to sue the owner, master, or craft, is recognized by this ^construction. It is only limited by requiring the suit against the craft to be instituted before it is converted into money. The statute of limitations may be said to repeal the law with the same propriety; for that would limit the time after which a suit could not be sustained.
The case of the steamboat Waverly, decided at this term, is also-relied on as an authority against this construction. The point decided in that case is a different one. That was a ease of private sale, to a purchaser who had notice, and the decision is placed on different grounds. A purchaser at such sale takes only the interest and title of the vendor, and holds his property as his vendor held it. The one can ‘convey no better title than he has, and the other can acquire, by his purchase, but the same. This distinction may well be made between the two eases. The private sale is the act of the owner for his individual benefit, and the purchaser may secure himself by taking indemnity against existing liabilities from the vendor. The judicial sale is the act of the law, and the purchaser at such sale can have no indemnity — can require no disclosure of the existing liabilities from the owner; and, were he to solicit information from him, it is not likely he would be disposed to give it, in aid of a forced sale, where the tendency of the information would be to reduce the amount of the bids upon the property. Judgment affirmed.