Maxwell, J.
At common law the husband and wife are treated as one person, that is, the legal existence of the wife is suspended during marriage, and she becomes incapable of making a valid contract to bind either herself or her estate. Equity, however, following the rules of the civil law, treats the husband and wife as distinct persons, capable of having separate estates, debts and interests, and regards a married woman as to her separate property as a feme sole. And the fact that the debt has been contracted during coverture, either as principal or as surety for herself or husband, or jointly with him, seems ordinarily to be held prima facie evidence of intention to charge her separate estate, without any proof of a positive agreement or intention to do so. Balpin v. Clarke, 17 Ves., 365. Story’s Eg., 1400. Murry v. Beebe, 4 Sim., 82. Owens v. Dickerson, 1 Craig & Ph., 48. North v. Turrill, 2 P. Wm., 144.
Our statute provides that “a married woman, while the marriage relation subsists, may bargain, sell and convey, her real and personal property, and enter into any con *317 tract witli reference to the same, in the same manner, to the same extent, and with like effect as a married man may in relation to his real and personal property. A married woman may carry on any trade or business and perform any labor or services on her sole and separate account, and the earnings of any married woman from her trade, business, labor, or services, shall be her sole and separate property, and may be used and invested by her in her name.” In the case of Yale v.Dederer, 22 New York, 150,where a wife signed a note with her husband as surety, she having a separate estate, the court held that unless the consideration of the contract was one going to the direct benefit of the estate, the intention to charge the separate estate must be stated in and be a part of the contract. And the court refused to permit parol proof to establish that intention. That decision, in our opinion, cannot be sustained on either principle or authority.
In Ballin v. Dillaye, 37 New York, 35, the defendant, a married woman having separate property, in 1860, under a special agreement purchased certain premises at a mortgage sale; and among other things she agreed to assume a certain mortgage on the premises, and to secure such payment by a new mortgage executed by herself. She received a conveyance of the property and executed a new mortgage omitting two lots, to which she had received an unincumbered title. The mortgage was foreclosed in 1861, and on the sale there was a deficiency of about $600 which the plaintiff sought to make a charge against her other separate property.
The court held: “I have no doubt therefore, in the case at bar, the obligation which the defendant took upon herself, by the execution of the bond, was for the benefit of her separate estate, which is therefore chargeable in equity with the payment of the deficiency in question.”
The law permits a married woman to control her own property as she sees fit. She may sell, give away, or *318 mortgage it; permits lier to carry on business on her own account, and to receive the earnings, and she is bound like a feme sole by all contracts made by her in relation to her separate business or property. These rights imply the power to contract debts, and to enter into obligations for their payment out of her separate property. The statute by removing her disabilites requires her by implication to subject her property to the payment of her debts, and by incurring an indebtedness she is' presumed to intend that it shall be so paid. We have no doubt the note in this case is valid. See Deering v. Boyle, 8 Kan., 525. Todd v. Lee, 15 Wis., 365.
The referee finds that Monell and Lashley purchased the note and mortgage before maturity and without notice.
In Bailey v. Smith, 14 Ohio State, 413, the court held that “mortgages were mere dioses in action, whether standing alone or taken to secure negotiable or nonnegotiable paper; that they are only available for what is honestly due from the mortgagor to the mortgagee.” And the courts of Illinois hold substantially the same doctrine.
In Harkrader v. Lieby, 4 Ohio State, 603, the court held, “it is incorrect to say that a mortgage does no more than create a lien on the property. It operates as a conveyance of the estate by way of pledge or security for the debt, and gives the mortgagee the benefit of all the doctrines applicable to bona fide purchasers.” This is holding in effect that the mortgagee has an estate in the mo'rtgaged premises during the continuance of the mortgage.
The ancient equity practice, and which continued in England until about the year 1845, was to-file a bill for strict foreclosure, whereby a decree was obtained for the payment of the mortgage debt within a short period, to be fixed by the court, in default whereof the mortgagor *319 and all persons claiming under him were barred and foreclosed of all right and equity of redemption, and the estate became the property of the mortgagee in. the character of purchaser. And the court, except in special cases, refused to decree a compulsory sale against the will of the mortgagor, but courts of equity were in the habit of enlarging the time to redeem, according to the equity arising from circumstances. 2 Van Santvoord’s Eq., 70. 4 Kent’s Coms., 181. Story’s Eq., Sec. 1026. And this practice seems to have prevailed in the New England states. 4 Kent’s Coms., 181. See also, Higgins v. West, 5 Ohio, 555. And as between the mortgagor and mortgagee, and those claiming under them, after condition broken, the estate became absolute in the mortgagee, subject however to be redeemed at any time before foreclosure. A non-negotiable bond in many cases appears to have accompanied the mortgage, but as a suit on the bond for the deficiency opened the decree, and permitted the mortgagor to redeem, there seems to have been but little inducement to bring such an action. Dashwood v. Blythway, 1 Eq. Cases, 317. Perry v. Barker, 13 Ves., 198. Lovell v. Leland, 13 Vt., 581. Rev. Stat. Mass., 1835. Contra, Lansing v. Goelet, 9 Cow., 346.
In Howard v. Harris, 1 Vern., 190, the mortgage contained a covenant to pay ¿61000 on the-day of --, 1686, and £60 per annum interest, in the meantime, by half-yearly payments from the date of the mortgage. It was afterwards held that the omission of the covenant wras immaterial. 1 P. Wms., 271. 3 Id., 358. 2 Atk., 496.
Promissory notes payable to bearer or order were made negotiable by statute in the year 1704, (3 & 4 Anne., Ch. 9,) but do not appear to have been used to any extent in connection with mortgages until the present century.
*320 In states like Ohio, where it is held that after condition broken the legal estate is vested in the mortgagee, a mortgage may perhaps be properly regarded as a chose in action, and available only for what is honestly due from the mortgagor to the mortgagee. Bailey v. Smith, 14 Ohio State, 413. Allen v. Everly, 24 Ohio State, 97. Fische v. Kramer’s Lessee, 16 Ohio, 126. Maynard v. Hunt, 5 Pick., 243. Winslow v. Merchant’s Ins. Co., 4 Met., 306. Frothingham v. McKusick, 24 Me., 403.
But in this state the mortgagee is not seized of the freehold, either at law or in equity, even after condition broken. The mortgagor retains the legal title, and is entitled to the possession, which he may retain until the sale is confirmed. The mortgage is a mere incident to the debt and passes with it, and nothing whatever passes by an assignment of the mortgage, without the note or debt. If a note is negotiable, as in this instance, and transferred before maturity for a valuable consideration, without notice of any defense, the assignee takes it, and the security, free from equities between the original parties. Kyger v. Riley, 2 Neb., 28. Carpenter v. Longan, 16 Wall., 371. Pierce v. Faunce, 47 Me., 507. Potts v. Blackwell, 4 Jones Eg., 58. Fisher v. Otis, 3 Chandler, 83. Reeves v. Sculley, Walk. Ch., 248.
The case of Mathews v. Wallwyn, 4 Ves., 118, has no application to this case; had the note been non-negotiabie or overdue at the time of the transfer, it would have been subject to equities between the original parties.
The fact that the mortgage in this instance is in the form of a deed of trust, does not change its character from a mere security for the payment of money, nor does it convey the legal title, nor do the restrictions therein contained prevent the plaintiff from availing herself of the safeguards thrown around the debtor to prevent a sacrifice of her property. The judgment of the court below as to Monell and Lashley is affirmed. It *321 is apparent from the finding of the referee that the defendant Hoselton took advantage of the plaintiff’s ignorance in obtaining the note and mortgage, (if he is not guilty of actual fraud,) but no relief can be afforded the plaintiff in this form of action. The petition against Hoselton is therefore dismissed without prejudice.
Judgment accordingly.
Gantt, J., dissented.