## E. J. WADDLE V. THOMAS P. OWEN.

### FILED JANUARY 15, 1895.   No. 5510.

1. **Pledges:** TRANSFER OF COLLATERAL SECURITIES: CONVERSION. The payee of a negotiable instrument, to secure the payment of which the negotiable notes of third persons have been pledged, may in the regular course of business negotiate said instrument and transfer with it the securities, and such action will not amount to a conversion of the securities.

2. ———: TROVER AND CONVERSION. The payee of such an instrument who negotiates it in the usual course of business and transfers the securities to the endorsee before payment or tender of the amount due thereon, is not liable in trover for the securities, even though the endorsee convert them.

3. **Evidence:** NEGOTIABLE INSTRUMENTS. Parol evidence is inadmissible to establish an oral agreement contemporaneous with the making of a negotiable instrument whereby said instrument was not to be negotiated.

ERROR from the district court of York county. Tried below before MILLER, J.

The facts are stated by the commissioner.

*Jerome H. Smith,* for plaintiff in error:

The sight draft was negotiable. (Compiled Statutes, sec. 1, ch. 41; *Green v. Raymond,* 9 Neb., 295.)

Plaintiff in error had a lawful right to assign the sight draft to a third person and give the latter the benefit of the collateral security. (*Chapman v. Brooks,* 31 N. Y., 75; *Henry v. Eddy,* 34 Ill., 508; *Stearns v. Bates,* 46 Conn., 306; *Jones v. Quinnipiack,* 29 Conn., 25; *Belcher v. Hartford Bank,* 15 Conn., 383; *Hawks v. Hinchcliff,* 17 Barb. [N. Y.], 492; *Merchants Nat. Bank v. State Nat. Bank,* 10 Wall. [U. S.], 604; *Jarvis v. Rogers,* 13 Mass., 105; *Bank of New York v. Vanderhorst,* 32 N. Y., 553; *City Bank v. Taylor,* 60 Ia., 66.)

The transfer of a note secured by mortgage carries mortgage security, and the same rule applies to notes held as collateral security. (*Hutchinson v. Crane*, 100 Ill., 269; *Wright v. Troutman*, 81 Ill., 374.)

To make a tender valid there must be an actual production of the money or something to excuse a failure to produce it. (*Camp v. Simon*, 34 Ala., 126; *Hunter v. Warner*, 1 Wis., 144; *Eastman v. Township of Rapids*, 21 Ia., 590; *Jones v. Mullinix*, 25 Ia., 198.)

A tender of money in payment of a debt, to be valid, must be without qualification. (*Tompkins v. Batie*, 11 Neb., 147; *Sanford v. Bulkley*, 30 Conn., 344; *Wood v. Hitchcock*, 20 Wend. [N. Y.], 47.)

The pledgee is not liable in trover for conversion of his transferee. (Colebrooke, Collateral Securities, sec. 96; *Goss v. Emerson*, 23 N. H., 38.)

*Harlan & Harlan*, contra, cited : *Jarvis v. Rogers*, 15 Mass., 389; *Boughton v. United States*, 12 Court of Claims, 331; 7 Wait, Actions & Defenses, 179; Colebrooke, Collateral Securities, secs. 102, 129; 1 Daniel, Negotiable Instruments, sec. 833; Boone, Code Pleading, sec. 148.

IRVINE, C.

Owen brought this action against Waddle to recover for the conversion of two promissory notes of third persons, payable to the order of Owen, and which the petition alleged had been pledged to Waddle as security for a bill of exchange drawn by Owen to Waddle's order on W. T. Scott, of York. The defendant's answer alleged that he had sold and transferred the draft to E. J. Hainer for value and had delivered to him the notes pledged to secure it in the ordinary course of business, and prior to any demand or tender of the amount due on such draft.

The case was tried to the court without the intervention of a jury and there was a finding and judgment for Owen

for $230.54. This judgment Waddle seeks to reverse. The assignments of error reduce themselves to the single question of the sufficiency of the evidence.

There is not much dispute as to the facts. Waddle resided in Aurora. His business consisted in part at least of lending money. On Saturday, May 18th, 1889, Owen endeavored to sell to Waddle a number of notes of third persons. For some reason Waddle and Owen did not reach an agreement as to the sale, but Owen stating that he needed $50 that day, Waddle agreed to advance him that amount on the notes, and by agreement between them Owen drew a demand bill as follows:

"$51.00.                HAMPTON, NEB., May 18th, 1891.

"On demand, pay to the order of E. J. Waddle, fifty-one dollars, value received, and charge to the account of
                                    " T. P. OWEN.

"To W. T. Scott, York, Neb."

The one dollar, in addition to the fifty dollars advanced, was to compensate Waddle. Several notes payable to Owen's order, and including the two notes in question, were attached to the draft, and, as both parties testified, were intended to secure the same and were to be delivered to Scott on payment of the draft. These notes, as they appear in evidence, are indorsed generally by Owen. Owen claims that there was a special agreement whereby this draft with the notes attached was to be forwarded by Waddle to York for collection. The legal effect of this evidence will call for notice in the course of the opinion. Waddle did not forward the draft to York, but retained it until the morning of the following Tuesday, when he entered the Farmers & Merchants Bank of Aurora, of which Mr. Hainer was president, for the purpose of committing the papers to the bank for collection. Mr. Hainer suggested that he would buy the draft from Waddle and give him immediate credit for the amount. This offer was accepted and the draft was indorsed, "Pay to the order of E. J.

Hainer, without recourse on E. J. Waddle." It was then delivered to Hainer with the collateral notes. The day previous, the drawee, Mr. Scott, had sent a clerk to Aurora to take up the draft. Waddle swears that this clerk made no tender of any money, but on the contrary, learning that there was a question as to Owen's good faith in the transaction, disclaimed the intention of having anything to do with the business. The clerk testifies that he tendered $50 on that day to Waddle and that Waddle refused it for the reason that the county attorney had instructed him to hold the notes in his possession. There is no testimony to contradict that of Waddle and Hainer as to the transfer from the former to the latter, unless it be the testimony of Owen as to conversations with Waddle and Hainer, in which he says Waddle said he had not sent the draft because the county attorney had ordered him to hold the notes and Hainer told him he would have to see Waddle about them. This is entirely insufficient to overcome the positive and circumstantial testimony of Waddle and Hainer. Some days after the transfer Owen tendered Waddle the amount of the draft and demanded the notes and Waddle said he did not have them. This evidence was insufficient to support the finding for Owen. The bill of exchange in evidence was clearly negotiable, and parol evidence was inadmissible for the purpose of showing an oral agreement contemporaneous with the drawing of the bill that it should not be negotiated. To permit such evidence would infringe upon one of the best settled rules of evidence. If there had been such agreement, it could have been given effect by omitting from the bill the words of negotiability. Having deliberately inserted words importing negotiability, the drawer cannot be heard to urge a contemporaneous oral agreement contrary to the plain terms of the bill. (*McSherry v. Brooks*, 46 Md., 103.) The notes pledged as collateral were merely a security for the payment of the bill. The debt was the principal thing, and the pledge

merely incidental to it.   The debt being transferred, the
pledge passed with it.   (*Webb v. Hoselton,* 4 Neb., 308;
*Moses v. Comstock,* 4 Neb., 516; *Harman v. Barhydt,* 20
Neb., 625; *Daniels v. Densmore,* 32 Neb., 40; *Todd v.
Cremer,* 36 Neb., 430.)

The foregoing were all cases of real or chattel mortgages,
but if there is any difference in principle, the reason is
stronger for holding that a pledge of negotiable instru-
ments follows the debt than that a mortgage does so.   That
notes so pledged may be passed to the assignee of the debt,
see *Chapman v. Brooks,* 31 N. Y., 75; *Goss v. Emerson,*
23 N. H., 38; and that the pledge must accompany the
debt, see *Van Eman v. Stanchfield,* 13 Minn., 70; *Green v.
Graham,* 46 N. H., 169. It is true that in *Johnson v. Smith,*
11 Humph. [Tenn.], 398, it was held that the assignment
of a debt secured by a pledge of personal property did not,
without delivery of the pawn, carry with it and vest in
the assignee a lien upon the property.   But it was there
suggested that in such case the pawnee might be regarded
as holding possession as agent of the assignee.   But this
decision, based upon the necessity of the delivery of per-
sonal property to effectuate a pledge thereof, has no effect
upon this case where the notes were delivered with the bill.
The bill being negotiable, Waddle had a right to trans-
fer it by indorsement to Hainer and to transfer with it the
accompanying securities.   There is a vast difference be-
tween the position of a pledgee who retains the principal
debt and wrongfully parts with the securities pledged
thereto, and that of one who in the regular course of busi-
ness transfers the debt and with it the securities, without
diverting the latter from the purpose for which they were
pledged.   The first act constitutes a conversion, the latter
does not.   If before Waddle parted with the draft he had
been paid or tendered the amount due by any one author-
ized to accept or pay the same, and had refused to deliver
the securities, we have no doubt an action would lie against

him; but such was not the case. The only tender made
before the transfer to Hainer was that made on behalf of
Scott. We need not determine whether the tender by the
drawee Scott would have created a cause of action in favor
of the drawer because there was no sufficient tender by the
drawee even. According to the clerk referred to, the tender
made was $50, while the draft was for $51. Nor need we
consider whether the transaction between Waddle and
Owen was usurious. If it was, this was no affair of Scott's,
and in order to pay the draft and be entitled to the securi-
ties he would have been required to pay or tender the face
of the draft. This was not done. Waddle having a right
to negotiate the bill and to transfer the securities with it,
and having done so before payment or tender of the amount
due thereon, he is not liable in trover for the securities.
On this proposition the case of *Goss v. Emerson, supra,*
is precisely in point, and states we think the correct doc-
trine.

REVERSED AND REMANDED.