## STATE BANK OF CERESCO V. WILLIAM BELK.

### FILED NOVEMBER 17, 1898. No. 8384

1. **Contracts: PAROL EVIDENCE.** Where negotiations take place between parties which result in their reaching an agreement in reference to the subject-matter of the negotiations, and the parties subsequently reduce their agreement to writing, and sign and deliver the same, then, in the absence of fraud or mistake, or an ambiguity in the writing, it constitutes the best and the only competent evidence of the contract originally made.

2. **Action on Note: DEFENSE: PLEADING.** The answer set out in the opinion and *held* not to state a defense.

ERROR from the district court of Lancaster county. Tried below before HALL, J. *Reversed.*

See opinion for references to cases.

*Lambertson & Hall* and *A. G. Greenlee,* for plaintiff in error.

*Burr & Burr, contra.*

RAGAN, C.

The State Bank of Ceresco, Nebraska, brought this suit in the district court of Lancaster county against William Belk on a promissory note. Belk had judgment, to review which the bank has filed here a petition in error.

The note declared upon by the bank was in words and figures as follows:

"$300.00.                    CERESCO, NEB., Sept. 30, 1889.

"On demand after date, for value received, we jointly and severally promise to pay to the order of the State Bank of Ceresco, Nebraska, three hundred dollars, with interest at the rate of ten per cent per anum from maturity until paid. This note is given as security for a note of even date and amount of Thomas Stretch in favor of State Bank of Ceresco, and the maker hereby waives

protest and notice of non-payment and guaranties the payment of said note or any renewal of the same.

"WM. BELK."

In his answer Belk admitted the execution and delivery of the note sued on and then pleaded: "Further answering, the defendant alleges that prior to the date of said note Thomas Stretch, therein named, had executed a note of like amount to the plaintiff with the defendant as surety; that when said note became due the defendant refused to sign a renewal thereof; that in consequence thereof it was agreed by and between the defendant and the plaintiff that the defendant should execute the note sued on, and deliver the same to the plaintiff, and the plaintiff should hold it until he should secure other sureties upon the note of said Stretch, then that the note sued on should be returned to the defendant and he should not be held thereon. And the defendant alleges that thereafter the plaintiff did secure other, to-wit, three, sureties upon said new note of said Stretch, being the note referred to in the note sued on, and surrendered the original note and took and accepted the new note of said Stretch with said three sureties, by reason whereof, and by reason of said agreement, it became the duty of the plaintiff to return the note sued on to the defendant, and the defendant was relieved of liability thereon, and the same was fully paid, discharged, and satisfied." On the trial Belk was permitted to introduce evidence which sustained the averments of his answer; and the question presented by the record is the correctness of the ruling of the court in admitting this testimony; or what is the same thing, does this answer state a defense?

The contract in suit recites that it was executed as security for a note signed by Thomas Stretch, dated September 30, 1889. The answer avers that the note in suit was executed as security for a note signed by Thomas Stretch and William Belk, dated prior to September 30, 1889. The note in suit by its terms is payable on de-

mand. The answer avers that the note was never to be paid if the bank obtained sureties upon the note of Stretch. It is obvious that any evidence which would sustain the averments of this answer would vary and contradict the express recitals of the written contract in suit. ·

In *Hamilton v. Thrall*, 7 Neb. 210, this court decided that when parties have reduced their contract to writing the law presumes that all the previous and contemporaneous negotiations and conversations leading to the contract are merged in it and that such a contract could not be varied by parol testimony.

*Van Etten v. Howell*, 40 Neb., 850, was a suit upon a promissory note. One of the defenses interposed was an oral agreement between the maker and payee that the note was not to become due until a certain case then pending in this court should be decided, and the court, speaking to this defense by RYAN, C., said: "The trial court properly ruled that no evidence was admissible when offered, and instructed the jury that none should be considered which tended to vary or contradict the terms of the several notes by showing that contemporaneously with making each an oral agreement was entered into by the makers and payee contradictory of the terms of such note."

In *Waddle v. Owen*, 43 Neb. 489, Owen gave Waddle a demand draft payable to his order for $51, and as collateral security for the same indorsed and delivered to Waddle two promissory notes then the property of Owen and payable to his order. Waddle negotiated and transferred the draft and the notes which he held as security therefor, and thereupon Owen sued Waddle for conversion of the notes. Waddle defended by establishing the facts just stated, and Owen attempted to counteract this defense by showing by parol that the agreement between himself and Waddle at the time of the execution and delivery of the draft and the delivery of the notes was that this draft was to be non-negotiable. But the court held

that this parol evidence was inadmissible to establish such an oral agreement. The court, speaking through IRVINE, C., said: "The bill of exchange in evidence was clearly negotiable, and parol evidence was inadmissible for the purpose of showing an oral agreement contemporaneous with the drawing of the bill that it should not be negotiated. To permit such evidence would infringe upon one of the best settled rules of evidence."

In *Western Mfg. Co. v. Rogers*, 54 Neb. 241, it was ruled that a promissory note or contract could not be varied, qualified, or contradicted by evidence of a prior or contemporaneous agreement resting in parol.

In *Sylvester v. Carpenter Paper Co.*, 55 Neb. 621, it was said: "Where negotiations take place between parties which result in their reaching an agreement in reference to the subject-matter of the negotiations, and the parties subsequently reduce their agreement to writing, and sign and deliver the same, then, in the absence of fraud or mistake, or an ambiguity in the writing, it constitutes the best and the only competent evidence of the contract originally made."

We think these cases control the case at bar. Human memories at best are fallible, and people reduce their contracts to writing in order that there may be no mistake or uncertainty as to what their agreements are; and in the absence of fraud or mistake the recitals of a written contract are the best and only competent evidence of the agreements of the parties thereto.

Counsel for Belk, in support of their contention that this answer states a defense and that the court did not err in admitting evidence in support of its averments, have cited us among others to the following cases:

*Ruggles v. Swanwick*, 6 Minn. 365; but that case only holds that while a promissory note is in the hands of the original payee it may be shown in a suit thereon that it was in fact never delivered.

Another case is *Wilson v. Powers*, 131 Mass. 539. This was a suit against a surety upon a promissory note. His

defense was that the time of payment of the note had
been, by written agreement entered into between the
holder and the maker, extended without the surety's
knowledge or consent.  The holder of the note was per-
mitted to meet this defense by showing by parol that
the alleged written agreement of extension was a mere
proposition of extension to become binding only when
assented to by the surety.  The case rests upon the prin-
ciple that the oral testimony did not tend to modify, con-
tradict, or vary the written agreement, but simply
showed that the written agreement had never become
operative.

Another case is *Belleville Savings Bank v. Bornman*, 16
N. E. Rep [Ill.] 210.  In that case the Belleville Nail-Mill
Company drew its draft on its treasurer for $10,000, pay-
able to the order of the Belleville Savings Bank.  Born-
man, the president of the nail-mill company, then put
his guaranty on the back of the draft, handed it to the
treasurer of his company, and instructed him to take it
to the bank and inform the bank of his guaranty on the
draft, but that it was not to be delivered to the bank or
be in force unless one Abend, the president of the bank,
should also guaranty the draft.  The treasurer of the
mill company took the draft as directed to the bank, gave
it the information which he had been directed to give,
but nevertheless the bank took possession of the draft
and kept it without Abend's indorsement thereon, and
sued Bornman thereon; and the court held that he might
show by parol the facts just narrated.  The decision in
this case rests upon the same principle as the Massachu-
setts case just cited, namely, that the parol testimony
did not tend to contradict or vary the terms of the draft,
but simply showed that it had never become operative
as a draft.  To the same effect is *Dodd v. Dunne*, 71 Wis.
578.

Another case cited by counsel is *Ware v. Allen*, 128 U.
S. 590.  In that case W. P. Ware was agent for his
brother, T. P. Ware, and conducted for him a mercantile

business. W. P. had in his possession two notes payable to his order which had been given to him by his brother T. P. These notes were for $5,000 each. T. P. Ware was largely indebted to Allen, West & Bush, wholesale dealers in New Orleans. W. P. Ware went to New Orleans and requested Allen, West & Bush to take from him an assignment of the two notes of his brother and to use these notes as the basis of an attachment suit against his brother for the purpose of collecting his debt to them. In furtherance of this scheme W. P. Ware also requested Allen, West & Bush to execute and deliver to him a note for $10,000, due in ninety days, in consideration of the two notes of his brother which he had assigned or would assign to them. Allen, West & Bush took an assignment of the two T. P. Ware notes from W. P. Ware, and executed to W. P. Ware a note payable to his order, due in ninety days, for $10,000, and delivered it to him under a verbal agreement between them that the delivery should be of no effect unless Judge Harris or J. M. Allen, one or both of them, on being requested should advise them, Allen, West & Bush, that the transaction was legal and also advise them to pursue the method pointed out to them by W. P. Ware for collecting their debts from T. P. Ware. Judge Harris refused to give any advice on the subject, and J. M. Allen disapproved of the scheme and advised Allen, West & Bush to have nothing to do with it. Allen, West & Bush then returned, or offered to return, to W. P. Ware the two notes which he had assigned to them, and notified him that the contract evidenced by the note was at an end. Ware then sued the note in a court of chancery in the state of Mississippi, from which it was removed to the federal court, in which a judgment was rendered in favor of Allen, West & Bush, and an appeal was taken to the supreme court of the United States, which affirmed the judgment. The only point in the case was whether Allen, West & Bush could show by parol the agreement between them and W. P. Ware that

the note was not to take effect unless the scheme which led to its execution should be approved by Judge Harris or Mr. Allen. The opinion of the supreme court was written by Mr. Justice Miller, who said: "We are of opinion that this evidence shows that the contract upon which this suit is brought never went into effect; that the condition upon which it was to become operative never occurred, and that it is not a question of contradicting or varying a written instrument by parol testi- mony, but that it is one of that class of course, well recognized in the law, by which an instrument, whether delivered to a third person as an escrow or to the obligee in it, is made to depend, as to its going into operation, upon events to occur or be ascertained thereafter." This case also rests upon the principle that there never was any complete final delivery of the writing as the promissory note of the makers payable at all events and according to its terms. To the same effect is *Burke v. Dulaney*, 153 U. S. 228.

These cases, and all of them, we think are distinguishable from the case at bar. In no one of those cases was it sought to contradict or vary the express terms of the written instrument sued upon by parol testimony. The judgment of the district court is reversed.

REVERSED AND REMANDED.