STATE BANK OF O'NEILL, APPELLANT, v. W. D. MATHEWS, IMPLEADED WITH THOMSON-HOUSTON ELECTRIC COMPANY, APPELLEE.

FILED JUNE 22, 1895. No. 6369.

1. **Deeds as Mortgages.** A deed absolute in form will be treated as a mortgage when it is given to secure payment of a debt, although the parties may have agreed that upon default of payment the deed should become absolute.

2. ———: ASSIGNMENT OF SECURED NOTES. A made to B his promissory notes, and to secure the payment thereof conveyed real estate to B by deed absolute in form. B sold the notes to C, and to secure them executed to C an instrument in the form of a mortgage on the land conveyed by A's deed. *Held*, That this mortgage would be treated as an assignment of the mortgage from A to B.

3. **Mortgages:** ASSIGNMENT OF PART OF NOTES SECURED: FORECLOSURE: DISTRIBUTION OF PROCEEDS OF SHERIFF'S SALE. Where a mortgage secures the payment of several notes, the assignment of one of the notes is an assignment *pro tanto* of the mortgage, and in the absence of any stipulation to the contrary, all the notes secured by the mortgage are entitled to share *pro rata* in the distribution of the fund realized from foreclosure of the mortgage.

4. ———: ———: ———: ———. The holder of several notes secured by the same mortgage transferred a portion of them to A by general indorsement, and thereafter indorsed the remaining notes without recourse to B. *Held*, That under these facts the case fell within the general rule above stated.

5. ———: ———: ———: ———.   The fact that the notes first to mature were transferred prior to the transfer of the remaining notes did not imply any agreement that those first transferred should have preference.

APPEAL from the district court of Holt county.   Heard below before BARTOW, J.

*H. M. Uttley,* for appellant.

*Thomas Carlon, contra.*

IRVINE, C.

One Donald McLean made and delivered to W. D. Mathews four promissory notes, each dated December 31, 1890, one for $2,000, payable ninety days after date, one for $1,500, payable five months after date, one for $1,500, payable six months after date, and one for $5,000, payable eight months after date.   To secure these notes he conveyed by deed absolute in form, certain real estate to Mathews. The pleadings on both sides admit that this conveyance was made as security, and it was, therefore, a mortgage in spite of its form.   A few days thereafter Mathews sold the three notes first to mature to the State Bank of O'Neill, of which Mathews was president, and at the same time executed to that bank an instrument in the form of a mortgage on the land conveyed to him by McLean.   This mortgage was conditioned to secure all four notes.   The three notes sold were indorsed by McLean generally.   Still later McLean, in part payment of a debt to the Thomson-Houston Company, indorsed the remaining note without recourse to that company.   After the maturity of the notes the bank instituted foreclosure proceedings, making the Thomson-Houston Company a party defendant.   A decree of foreclosure was rendered, and the land sold, not realizing enough to pay all the notes.   The decree had not fixed the order of payment, but directed the purchase money to

be brought into court. After this was done the bank ap-
plied for an order distributing the money, and giving it
priority. The court refused this order, but instead thereof
directed the money, after payment of costs, to be divided
*pro rata* between the bank and the electric company.
From this order the bank appeals.

As we have said, the conveyance from McLean to
Mathews must be treated as a mortgage, and this notwith-
standing the fact that McLean testifies that the agreement
was that if the first note was not paid the deed should be-
come absolute. This was the understanding and is the legal
effect of all mortgages, and the whole doctrine of foreclos-
ure and redemption arose from courts of equity relieving
against this understanding and its legal effect. This deed
being a mortgage, the mortgage made by Mathews to the
bank must be considered merely as an assignment of the
mortgage from McLean to Mathews. It therefore cuts
very little figure. The mortgage is but an incident to the
debt, and by an assignment of the debt the mortgage passes
to the assignee. (*Webb v. Hoselton*, 4 Neb., 308.) It has
also been held that where a mortgage secures several notes
the assignment of one of the notes is an assignment *pro
tanto* of the mortgage, and that, in the absence of any stipu-
lation to the contrary, notes so secured share *pro rata* in
the distribution of the fund. (*Studebaker v. McCargur*, 20
Neb., 500; *Harman v. Barhydt*, 20 Neb., 625; *Todd v.
Cremer*, 36 Neb., 430; *Whipple v. Fowler*, 41 Neb., 675.)
Without considering the correctness of this rule, it is suffi-
cient to say that it has been for many years established in
this state. It has become a rule of property, and it will
not now be disturbed. Is there anything in this case to
take it out of the rule?

There is some argument on either side addressed to the
position of the parties as being purchasers without notice.
All these considerations may be dismissed. It is true that
Mathews, dealing with the bank in his individual in-

terest, did not charge the bank with notice of facts within his knowledge, and not communicated to other officers. (*Koehler v. Dodge*, 31 Neb., 328.) But the bank had notice otherwise. It appears from McLean's testimony, which is all the evidence in the case, that he had expected to sell all four notes to the bank, but the bank declined to take more than three; therefore, the bank had knowledge of the existence of the four notes, and the mortgage made by Mathews to the bank described all the notes, and in that way charged the bank with notice. (*Studebaker v. McCargur, supra.*) Nor can the electric company claim anything as a purchaser without notice, because it appears from the evidence that McLean informed the company, when he sold them the last note, that the other notes were secured on the same property. It is, therefore, not necessary to consider whether the situation would be different if either party took without notice of the rights of the other. The most forcible argument made on behalf of the appellant is that having indorsed the three notes generally to the bank, if McLean had retained the fourth note he could not, as against the bank, urge a right to participate *pro rata* in the proceeds of the mortgage, and that under the evidence the electric company has no equity superior to that of McLean. This argument appeals to the writer as one having in principle much force, but in *Studebaker v. McCargur* there was a general indorsement, and the court does not seem to have regarded that fact material. Moreover, the principle which would forbid McLean, had he retained the fourth note, from claiming the right to a *pro rata* distribution is based on the policy of courts of equity to avoid circuity and multiplicity of actions (*South Omaha Nat. Bank v. Wright*, 45 Neb., 23), rather than on any contractual obligation. So that the position of the electric company as transferee of the fourth note is not the same as McLean's position would be had he retained it. The electric company was not surety or indorser on the other notes.

It is argued that the rule requiring that such notes shall prorate may be varied by special agreement, but there is in this case no evidence of any such agreement. The fact that some of the notes were transferred before the others does not imply any agreement that the notes first transferred shall have priority. This feature existed in the cases we have cited. We see nothing in the case to take it out of the general rule.

JUDGMENT AFFIRMED.